IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SHANDOLYN PRATT, ) | Civil Action No. 3:08-3131-MBS-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

## ADMINISTRATIVE PROCEEDINGS

On October 14, 2005, Plaintiff applied for DIB and SSI. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing before the ALJ, at which Plaintiff (represented by counsel) appeared and testified, was held on August 22, 2007. In a decision dated October 25, 2007, the ALJ denied Plaintiff's claims finding she was able to perform her past relevant work as a housekeeper.

Plaintiff was forty-six years of age at the time of the ALJ's decision. She has a twelfth grade education plus one year of college (certified nursing assistant certificate), and past relevant work experience as a housekeeper. Plaintiff alleges disability since June 2004 due to a cerebral infarct, noninsulin-dependent diabetes mellitus ("NIDDM"), hypertension, and high cholesterol.

The ALJ found (Tr. 17-21):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since June 11, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: high blood pressure, noninsulin dependent diabetes mellitus, degenerative joint disease, history of cerebellar infarct, and dementia (20 CFR § 404.l520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift, carry and handle 20 pounds occasionally and ten pounds frequently; no heights or hazardous machinery; no climbing or balancing; no operation of automotive equipment secondary to stroke; no constant repetitive use of the right dominant hand; and no overhead work with the right hand.

6. The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.l565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 11, 2004 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

On August 5, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on September 11, 2008.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v.

Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## **MEDICAL EVIDENCE**

Plaintiff was hospitalized between June 10 and July 2, 2004 for a cerebellar infarct. She was treated with the placement of a right frontal ventricular drain (which was later removed) and anticoagulation medication. An MRI on June 14, 2004, revealed a stable left cerebellar lesion with a slight decrease in the size of dilated ventricles. Carotid Doppler revealed no evidence of disease. Tr. 201-218, 281-282.

From July 4, 2004 to July 6, 2007, Plaintiff was treated by physicians at Family and Preventative Medicine in Columbia, South Carolina for hypertension, NIDDM, hypercholesterolemia; and complaints of residual headache, confusion, stress, memory difficulties, right lower extremity pain, right shoulder pain, toe pain, and depression. Tr. 231-245, 275-331, 352-358, 392-415.

Dr. Lenwood P. Smith, Jr., a neurologist, examined Plaintiff on August 5, 2004. He noted Plaintiff had diminished finger-to-nose cerebellar testing on the left, but equal and reactive pupils, full extraocular movements, symmetric facial movements, normal lower cranial nerve functioning, symmetric shoulder shrug and tongue protrusion, equal and full grip strength, and normal upper

extremity muscle strength. Dr. Smith opined that Plaintiff's hydrocephalus had resolved, with some memory and personality changes by report, but that ongoing neurological followup would not be necessary. Tr. 219-220.

Dr. M. Francisco Gonzalez, a hematologist, treated Plaintiff with anticoagulation therapy for status post non-embolic ischemic infarct and associated subdural hematoma between August 13 and October 11, 2004. Plaintiff complained of residual headache and dizziness, and pain in the first digit of her right lower extremity. Dr. Gonzalez's examinations revealed that Plaintiff was alert and oriented and demonstrated adequate neurological functioning. She had reactive pupils, an absence of extremity ulcerations except for a discrete ulceration on her right great toe, and an absence of extremity deformities. Plaintiff denied lower extremity swelling or motor, sensory, or other neurological deficits. Tr. 221-224. An MRI on October 11, 2004, revealed a left cerebellar post-infarct encephalomalacia. No new abnormalities were noted. Tr. 228.

On April 9, 2005, Dr. Jonathan Venn, a clinical psychologist, examined Plaintiff. Plaintiff reported confusion and depression, as well as difficulties with short-term memory, organizational abilities, concentration, persistence, and stress. She reported she could care for her own personal needs (except for requiring assistance from her aunt to locate her clothing), watched television, performed tasks at an average pace, rode a city bus, attended the appointment unaccompanied, attended church infrequently, visited a friend weekly, and purchased groceries with a food stamp card. Dr. Venn's examination revealed that Plaintiff had psychomotor agitation; was oriented; demonstrated an absence of deficits in alertness, attention, or persistence; had adequate grooming; and had a normal gait. Plaintiff repeatedly gave irrelevant or grossly wrong answers to questions and was threatening, loud, and inappropriately angry. Dr. Venn concluded that the information obtained

4

during his evaluation was of questionable reliability due to Plaintiff's lack of effort and uncooperative behavior. He opined that Plaintiff possibly had mental functional limitations. Dr. Venn diagnosed possible dementia status due to infarct and possible malingering. Tr. 246-249.

Dr. William H. Crigler, a neurologist, examined Plaintiff on April 21, 2005. Plaintiff reported she smoked cigarettes and stated she was "not going to go back to work and you can talk to my lawyer about that." Dr. Crigler's examination revealed that Plaintiff was alert, but uncooperative. She demonstrated inappropriate anger; delay and resistance in answering questions; limited subtraction ability; normal visual acuity; symmetrical face and midline tongue; clear and coherent speech; the ability to state the date, year, and place of examination; normal sensation; normal strength; normal coordination; good lower extremity reflexes; and the absence of involuntary tremors or movements. Dr. Crigler noted that Plaintiff repeatedly emphasized she was disabled and unable to work. She demonstrated strong opinions that influenced the history she gave and her examination performance, such as readily discussing angry feelings about her mother but being silent when asked how she got to the examination and staring when asked the date, month, or year. Dr. Crigler concluded that Plaintiff had no significant physical impairment, but had a mild cognitive impairment and issues with anger and depression. Tr. 250-253.

Plaintiff self-referred herself to the Columbia Area Mental Health Center for treatment of anger and depression between May 2 and 11, 2005. She reported she had started on Celexa with good results. Tr. 378-383. 416-419.

On June 30, 2005, Dr. Lisa Klohn, a State agency psychologist, reviewed Plaintiff's records and completed a mental residual functional capacity ("RFC") assessment. She opined that Plaintiff could remember locations and work-like procedures, perform simple tasks for at least two hours at

5

a time without special supervision, understand and comply with normal work-hour requirements, understand and comply with basic supervisory instructions, interact appropriately with co-workers, respond to changes in routine and avoid safety hazards, travel to and from work using available transportation, make and set appropriate work-related goals, and make simple work-related decisions. Dr. Klohn thought that Plaintiff would do best in situations where she was not required to interact with the general public, and would do best in a low-stress work situation. Tr. 255-257. Dr. Klohn confirmed this mental RFC assessment on December 7, 2005. Tr. 346-348.

On May 9, 2006, Dr. Robbie Ronin, a State agency psychologist, reviewed Plaintiff's records and assessed her mental RFC. Dr. Ronin opined that Plaintiff was not significantly limited as to most mental activities (understanding and memory, sustained concentration and persistence, social interaction, and adaptation), but was moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, to interact appropriately with the general public, and to set realistic goals or make plans independently of others. Tr. 373-375.

Plaintiff was treated by Dr. Frank O. Pusey, Jr., a neurologist, from June 9 to September 20, 2006. Dr. Pusey prescribed medication for a mild cognitive impairment and treated Plaintiff for complaints of neck and hand pain. His examinations revealed that Plaintiff was alert and oriented in all spheres and had intact cranial nerve functioning; normal muscle bulk, tone, and strength; symmetric deep tendon reflexes; a slightly wide-based gait on one occasion; normal sensory functioning; and mild short-term memory deficit. He diagnosed a mild cognitive impairment and questionable anxiety complaints. Nerve conduction studies revealed mild-to-moderate right wrist neuropathy. A brain MRI on June 9, 2006, showed chronic ischemic white matter disease and old infarcts in the left cerebellum and right frontal pole. Tr. 384-391, 420-430.

From September 25, 2006 and March 19, 2007, Plaintiff received oral and injectable medication and physical therapy at Palmetto Health Richland for right shoulder pain. Examinations revealed that Plaintiff had normal sensory functioning throughout, normal grip strength, and normal right shoulder strength. A cervical spine MRI revealed mild congenital stenosis. Tr. 431-434.

## **HEARING TESTIMONY AND STATEMENTS**

In a telephone statement on February 25, 2005, Plaintiff reported she had good use of her arms and hands; cared for her own personal needs, including washing, bathing, dressing, and combing her hair; and watched television. She was angry with her mother. Tr. 127. On June 20, 2005, Plaintiff's mother reported in a telephone statement that Plaintiff exhibited bizarre behavior and threatened family members. Tr. 128.

In a November 4, 2005 function report, Plaintiff stated she resided with her boyfriend, cared for her own personal needs, performed limited household cleaning and other chores, watched her favorite television shows, and shopped without accompaniment. She also stated that she did not need to be reminded to go places, and her condition did not affect her abilities to stand, reach, sit, kneel, talk, see, or use her hands. Tr. 150-156. On November 14, 2005, Plaintiff reported (in a telephone call) that she did not receive mental health treatment, but took antidepressant medication prescribed by a family physician. Tr. 166.

On April 14, 2006, Plaintiff wrote on a function report that she resided with her boyfriend, but now cared for her own personal needs with difficulty, performed limited household cleaning and other chores, likeed to watch game shows, did a lot of reading, and shopped only with the accompaniment of her boyfriend. She stated she did not need to be reminded to go places, and her condition did not affect her ability to squat, bend, sit, kneel, talk, or climb stairs. Tr. 178-183. On

June 12, 2007, Plaintiff submitted a letter in which she wrote she had financial difficulty, received food stamps, and stayed with family members or at a shelter. Tr. 100-101.

At the hearing before the ALJ (August 2007), Plaintiff testified that she experienced depression, memory difficulties, and concentration difficulties for which she was currently under no treatment with the exception of medication prescribed by her family physician; right leg weakness for which she used a cane to ambulate; and right arm pain and reduced mobility for which she took no medication. Tr. 37, 40-43, 45-46, 48, 50, 53-54, 58, 60-61. She took medication for hypertension, hypercholesterolemia, and NIDDM, and reported these medications were effective. Tr. 44-45.

Plaintiff stated she resided with her boyfriend for two and one-half years, cared for her own personal needs, performed limited household cleaning and other chores with effort, prepared simple meals, watched television, and shopped for groceries Tr. 31, 46-50, 56. She reported she could eat and write with her right hand, was able to button her blouse in dressing for the hearing, was able to sit without restriction, and smoked cigarettes. Tr. 49, 48, 60-61.

## **DISCUSSION**

Plaintiff alleges that the ALJ erred because he failed to: (1) properly evaluate her mental and physical impairments; (2) find that she met one of the listings of impairments ("Listings"), 20 C.F.R. Pt. 404, Subpt. P, App. 1; and (3) properly evaluate her credibility. The Commissioner contends that substantial evidence supports the decision that Plaintiff was not disabled.

### A. **Substantial Evidence**

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate her mental and physical impairments, specifically her depression; dementia; severe and marked changes in mood, personality, and behavior; cerebella

infarct; and lingering effects of neurosurgery. The Commissioner contends that the ALJ properly considered Plaintiff's physical and mental impairments in light of the medical and non-medical evidence.

 Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

 The ALJ's determination concerning Plaintiff's RFC and her ability to perform her past relevant work as a housekeeper is supported by substantial evidence. Significantly, none of Plaintiff's treating or examining physicians or psychologists found that she was disabled or placed any restrictions on her ability to perform work. See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)(finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)(treating physician's opinion entitled to great weight).

 Although Plaintiff suffered from NIDDM, her condition was treated with medications, diet, exercise, and self-monitoring of her blood glucose levels. Examinations at Family and Preventative Medicine revealed normal diabetic foot examinations (Tr. 286, 304, 356, 393, 396); the absence of skin lesions or ulcerations with the presence of only a discrete ulceration on her right great toe (Tr. 222, 224, 399); and normal, symmetric carotid and pedal pulses and peripheral circulation without

cyanosis or edema (Tr. 239, 285, 298, 303-304, 308, 315, 326, 330, 356, 395, 399). Dr. Crigler noted that Plaintiff had normal visual acuity (Tr. 252). Plaintiff denied hypoglycemic symptoms, noted only occasional hyperglycemic symptoms (polyuria and polydipsia), and reported good home blood glucose levels with treatment. Tr. 238, 285, 298, 303, 307, 324, 329, 354, 393, 396. Her treating physicians noted no symptoms suggesting diabetic complications (Tr. 285, 329) and found that her NIDDM was in good control when she was compliant with treatment (Tr. 243, 278, 286, 299, 308). "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).

Plaintiff's depression also improved with medication. Tr. 308, 382. She only sought mental health counseling in May 2005.

Plaintiff also had a history of cerebellar infarct and related dementia. The presence of an ailment, however, does not automatically entitle a claimant to disability benefits, as there must be a showing of related functional loss. See Gross v.Heckler, 785 F.2d 1163, 166 (4th Cir. 1986). Examinations consistently revealed that Plaintiff was alert and oriented (Tr. 223, 248, 384-385, 387-388, 390); demonstrated adequate neurological function (Tr. 223); had intact cranial nerve functioning (Tr. 219, 384-385, 387-388, 390); clear, coherent speech (Tr. 252-253); intact judgment (Tr. 395); only mild cognitive impairment (Tr. 387-388); absence of deficits in attention or persistence (Tr. 248); adequate grooming (Tr. 248); good, symmetric deep tendon reflexes with decreased right-side reflexes on one occasion (Tr. 253, 384-385, 387-388, 390); normal sensory functioning (Tr. 252, 384-385, 387-388, 390, 395); normal coordination (Tr. 252); and normal gait and station (Tr. 248, 326, 330, 356, 395). A brain MRI on June 14, 2004 revealed stable left cerebellar lesion with decrease in dilated ventricles. Tr. 217, 281. A carotid Doppler revealed no

evidence of disease. Tr. 281. Additionally, Plaintiff denied bladder difficulties (Tr. 251), vertigo (Tr. 397); or motor, sensory, or other neurological deficits (Tr. 221, 298, 303, 329). In August 2004, Dr. Smith concluded that Plaintiff's hydrocephalus had resolved, with only some memory and personality changes by report, and that ongoing neurological followup was not necessary. Tr. 219-220. Dr. Pusey concluded that Plaintiff had only mild cognitive impairment and questionable anxiety complaints. Tr. 384-385, 387-388. Dr. Crigler opined that Plaintiff had only mild cognitive impairment. Tr. 253. Dr. Venn diagnosed only possible dementia and mental functional limitations. Tr. 249.

Plaintiff also had the severe impairment of hypertension. Her physicians, however, noted that her hypertension was in fair to good control with treatment. Tr. 278, 286, 308. Plaintiff reported that the medication she took for hypertension was effective. Tr. 44-45.

Although Plaintiff had the severe impairment of degenerative joint disease, examination revealed normal range of motion (Tr. 286, 298-299, 326, 330, 356); normal muscle bulk, tone, and strength (Tr. 219, 252, 384-385, 387-388, 390); full grip strength (Tr. 219, 432); normal right shoulder strength (Tr. 434); and normal sensory functioning (Tr. 252, 384-385, 387-388, 390, 395, 431-432). A cervical spine MRI revealed only mild congenital stenosis. Tr. 431. Plaintiff reported she could sit without restriction and her impairments did not affect her abilities to sit, reach, kneel, or use her hands. Tr. 58, 155, 182.

Plaintiff did not require ongoing treatment for her upper extremity impairment and reported she took no medications for these complaints. She had good use of her arms and hands, could eat and write with her right hand, had no motor or neurological deficits, and had no difficulty buttoning her blouse. See Tr. 37, 40, 60-61, 127, 221.

11

## B. Listings

Plaintiff alleges that the ALJ erred in failing to find that she met a listing under § 12.00 (Mental Disorders). Specifically, she claims that her testimony, testimony from her mother, and Plaintiff's medical records from her treating physician conclusively establish that she meets the listing at § 12.04B. Plaintiff argues that she meets this listing because she has medically documented persistence of depressive syndrome with marked restrictions in her daily living activities; ability to maintain social functioning; and ability to maintain concentration, persistence, or pace. The Commissioner contends that Plaintiff fails to show that she met or equaled this listing.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period...during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

The ALJ's determination that Plaintiff did not meet or equal the listing at § 12.04[1] is supported by substantial evidence as Plaintiff fails to show that she met or equaled part B of this listing. Plaintiff has not shown that she had marked restrictions of activities of daily living. She cared for her own personal needs (Tr. 46, 56, 179, 246), performed at least limited household chores (Tr. 46-47, 152), prepared simple meals (Tr. 48), attended church infrequently (Tr. 247), rode a city bus (Tr. 247), and shopped (Tr. 50, 153, 180, 247). The ALJ's determination that Plaintiff had only moderate difficulties in social functioning is supported by Plaintiff's ability (after her 2004 hospitalization) to visit a friend weekly (Tr. 247), go out to eat (Tr. 152), and begin and maintain a relationship with a boyfriend (Tr. 31, 178, 378). She also fails to show marked difficulties in maintaining concentration, persistence, or pace. The ALJ's determination that Plaintiff had only moderate difficulties in this area is supported by Plaintiff's reporting that she performed tasks at an

---

[1] At the time of the ALJ's decision, the Listing at § 12.04 required a claimant to show:
A. Medically documented persistence, either continuous or intermittent, of one of the following:
 1. Depressive syndrome characterized by at least four of the following:
  a. Anhedonia or pervasive loss of interest in almost all activities; or
  b. Appetite disturbance with change in weight; or
  c. Sleep disturbance; or
  d. Psychomotor agitation or retardation; or
  e. Decreased energy; or
  f. Feelings of guilt or worthlessness; or
  g. Difficulty concentrating or thinking; or
  h. Thoughts of suicide; or
  i. Hallucinations, delusions or paranoid thinking[.]
    \*\*\*\*\*
    And
B. Resulting in at least two of the following:
 1. Marked restriction of activities of daily living; or
 2. Marked difficulties in maintaining social functioning; or
 3. Marked difficulties in maintaining concentration, persistence, or pace; or
 4. Repeated episodes of decompensation, each of extended duration[.]
20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

average pace, watched television including game shows (Tr. 49-50, 183, 246-247), and did a lot of reading (Tr. 183). Examinations by physicians and psychologists revealed only mild short-term memory deficit; the absence of deficits in attention or persistence; and that she was able to state the date, year, and place of examination. The record does not contain any evidence of episodes of decompensation of extended duration.

The ALJ's decision is also supported by the opinions of the State agency psychologists. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians and psychologists]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). As discussed above, Dr. Klohn and Dr. Ronin found that Plaintiff was "not significantly limited" to at most "moderately limited" as her understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Tr. 255-257, 373-375, 346-348.

### C. New Evidence

Plaintiff argues in the alternative that this action should be remanded to the ALJ for further findings due to an October 27, 2008 amputation below the left knee. The Commissioner has not addressed this argument.

Additional evidence must meet the following four prerequisites before a reviewing court may remand the case to the Commissioner on the basis of newly discovered evidence:

1. The evidence must be relevant to the determination of disability at the time the application was first filed and not merely cumulative.

2. The evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been presented.

14

3. There must be good cause for the claimant's failure to submit the evidence.

4. The claimant must present to the remanding court at least a general showing of the nature of the new evidence.

See Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985).

Here, Plaintiff fails to meet the forth prong of the Borders test, as she has not presented a general showing of the nature of the new evidence. No medical records have been provided with her brief as to the amputation and there are no records of this in the administrative record. Even if Plaintiff has made a general showing, he has not shown that the new evidence relates to the period on or before the ALJ's decision (although it may be useful for a new disability application). A claimant must establish that the evidence was "relevant to the determination of disability at the time the application was first filed and not merely cumulative." Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983).

**D.  Credibility**

Plaintiff appears to allege that the ALJ erred in evaluating her credibility because he did not give any weight to the reports of contact and statements from Plaintiff or the one from her mother[2] and placed too much weight on the subjective views of Plaintiff's healthcare providers as to her possibility of malingering. She also claims that the ALJ erred in discounting her credibility due to inconsistencies, arguing that these inconsistencies should be attributable to dementia and memory

---

[2]As noted above, Plaintiff's mother stated in a telephone interview that Plaintiff exhibited bizarre behavior and threatened family members. Any error in failing to make express findings concerning this report is harmless error because Plaintiff's mother's report is contradicted by the same evidence that the ALJ used to discredit Plaintiff's subjective reports. See Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir. 1995)(ALJ did not err in failing to cite reasons to discredit testimony of Social Security disability claimant's spouse where most of spouse's testimony was discredited by the same evidence that discredited claimant's testimony regarding limitations).

15

loss. The Commissioner contends the ALJ properly considered Plaintiff's subjective complaints of disabling symptoms and concluded that they were not credible and did not prevent her from working.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a claimant's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence. He properly applied the two-part test above and found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. See Tr. 15-19. The ALJ's decision is supported by the medical record and Plaintiff's activities of daily living (including being able to care for her own personal needs, perform limited household cleaning, prepare simple meals, watch television, read, attend church, visit with a friend, ride a city bus, and shop), as discussed above. In his decision, the ALJ noted that (but did not inappropriately

rely on) Plaintiff's testimony was normal, appropriate, and competent. The ALJ also wrote that Plaintiff reported (Tr. 43, 171) she did not take medications for pain. Tr. 18. See, e.g., Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (expressing approval of ALJ's consideration of a plaintiff's lack of strong pain medication); see also 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").

Additionally, the ALJ noted discrepancies in the record which undermine Plaintiff's credibility. See Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)(ALJ may discount a claimant's complaints if inconsistencies are apparent in the evidence as a whole); SSR 96-7p (one strong indication of the credibility of an individual's statements is their inconsistency with other information in the case record). Although Plaintiff testified that she required frequent naps and her mind went blank, she made no complaints to her treating physicians of such limitations. She testified of daily suicidal thoughts (Tr. 44), but medical records reveal she denied suicidal ideation. As noted by the ALJ, Plaintiff testified that she was "a worker" and she "love[d] to work," but evidence suggested that statements made to Dr. Venn and Dr. Crigler were an effort to obtain disability and not return to work. See Tr. 18. Although Plaintiff contends the ALJ relied too heavily upon the subjective view of her medical care providers that she was malingering, the medical opinions, including those which opined malingering, are well supported by the objective mental and physical findings. Plaintiff's credibility is also diminished by numerous notes by her physicians that she was noncompliant with her medications and medical advice (concerning diet, getting exercise, and quitting smoking). Tr. 239-240, 302-304, 354, 357. See English v. Shalala, 10 F.3d 1080, 1083-1084 (4th Cir. 1993); see

also Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1993); 20 C.F.R. § 404.1530(a) and (b); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)(ALJ may consider a claimant's failure to follow treatment advice as a factor in assessing claimant's credibility).

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence or was not correct under controlling law. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

October 27, 2009
Columbia, South Carolina